## IN RE ESTATE OF WM. J. OVERTON.

Opinion delivered October 19, 1904.

1. *Estates of Decedents—Reports of Executor—Executor Right to Appeal from Order Sustaining Exceptions.*

    Under Mansf. Dig. Sec. 1267 (Ind. Ter. Stat. 769), an Executor has a right to appeal from a decision of court sustaining exceptions to his report and ordering a modification thereof, and a distribution of the estate contrary to his view of the manner required by the will.

2. *Executor's Report—Exceptions—Considered Though Filed Too Late.*

    Where exceptions to an executor's report are filed one day too late, the court will properly disregard a motion to strike said exceptions from the files, where no substantial right of the executor is affected.

3. *Executor's Report—Second Exceptions—Raising Same Questions Discretionary with Court to Consider.*

It is within the discretion of the court to consider exceptions to an amended report of Executor raising same questions as before, when filed before the final approval of the report and bringing to the attention of the court provisions of the will not before noticed.

4. *Probate Courts—Jurisdiction—Questions of Title to Property.*

The court sitting in probate has no jurisdiction to pass upon the disputed title to the beneficial interest in an insurance policy left by deceased payable to one of his heirs and to order the guardian of such heir, who happens to be also the xecutor of the will, to turn same into the distributive estate of the deceased where the said beneficiary is not a party to the proceedings in probate..

5. *Probate Court—Jurisdiction—To Compel an Election by a Devisee.*

The court, sitting in probate, has no jurisdiction to compel an election by a devisee under a will, where the devisee is not a party to the proceeding nor in court.

Appeal from the United States Court for the Northern District.

Joseph A. Gill, Judge.

Judicial settlement of the estate of William J. Overton, deceased. From rulings of the court on exceptions to the report of John C. Gray, executor, said executor appeals. Reversed.

On the 24th day of March, 1897, there was admitted to probate the last will and testament of William J. Overton, deceased:

"Being of sound mind and member, I hereby revoke all the wills I have heretofore made or may have made. I first commend my body to mother earth and my spirit to the God who gave it. And it is my last will and testament that the $2000.00 Life Insurance that I have in the Woodmen of the World that I

have taken out for the benefit of my daughter Daisy Overton, be used first to pay all of my just and legal debts that I owe. And that the remainder of said Life Insurance and that the remainder of all I now own or may hereafter own shall be equally divided between my daughter Daisy and my darling wife Bertie Overton, and the issue of my body. And it is my last will and testament that Mr. J. C. Gray of Vinita, Cherokee Nation, I. T. shall be appointed administrator of this my last will & testament without bond, and that he shall take charge of everything that I have, both personal & real in Texas and the Cherokee Nation I. T. or any where else that I may own property and manage the best he knows how, and that S. A. Overton, of Tyler, Texas, shall assist him in managing what effects that I have, both personal and real, in Texas. And I hereby ask that J. C. Gray, of Vinita, C. N., I. T., shall be appointed guardian of my daughter, Daisy.

"Being of sound mind and members I hereby revoke all other wills that I have made or signed or may have made or signed.

"Witness this my last will and testament this the 15th day of September, 1896.

　　　　　　　　　　　　　　　"W. J. Overton."

On the 13th day of October, 1897, John C. Gray filed his petition to be appointed executor of said will, which was granted by the court and the appointment made; and on October 15, 1897, he qualified as such executor, and gave bond in the sum of $12,000. On the 6th day of January, 1898, said John C. Gray, as executor, filed with the clerk of the court an inventory and appraisement of said estate, and thereafter a supplemental inventory, showing the total value of said estate to be $6,387.85. On the 12th day of November, 1898, he filed his first annual

settlement of said estate, and, no exceptions having been taken thereto, same was duly approved. On October 4, 1899, he filed his second annual settlement, which was also approved, no exceptions having been taken thereto. On January 7, 1901, said Gray, as executor, filed his third annual settlement of said estate, showing as follows:

| | | |
|---|---:|---:|
| Cash on hand at last settlement | $3,646 | 05 |
| Cash collected | 105 | 785 |
| | | |
| Total cash | $3,751 | 835 |

And asking for credits for:

| | | |
|---|---:|---:|
| To Elbert Carlin, see voucher "A" | $1,490 | 80 |
| To Turner, Atty's fee, see voucher "B" | 150 | 00 |
| 1898. | | |
| Nov. 29. For one acknowledgment | | 25 |
| Dec. 5. For serving notices | 3 | 50 |
| 1899. | | |
| May 26. For drug bill at Wright's | | 60 |
| Oct. 2. For two acknowledgments | | 50 |
| 1900. | | |
| Jan. 9. For clerk's cost, voucher "C" | 5 | 00 |
| Jan. 22. For clerk's cost, filing bill, voucher "D" | 8 | 00 |
| April 26. For serving notices | 3 | 50 |
| Apr. 21. For probate commissioner's fee, voucher "E" | 2 | 50 |
| May 8. For trip to Texas as executor | 30 | 80 |
| As executor's commission he asks | 234 | 30 |
| | | |
| Total | $2,019 75 | $2,019 75 |

| | | |
|---|---:|---:|
| Leaving cash on hand | $1,732 | 085 |
| Asking credit also for uncollected paper | 568 | 77 |

Then he recapitulates, showing:

| | | |
|---|---:|---:|
| Total value of estate as per inventory and appraisement | $6,378 | 85 |

That he is entitled to the following credits:

| | | |
|---|---:|---:|
| Credits received as per 1st settlement | $1,878 | 25 |
| Credits received as per second annual settlement | 180 | 00 |
| Credits asked on third settlement | 2,019 | 75 |
| Uncollectible paper | 568 | 77 |

(23)

Cash on hand............................................ 1,732 085

| | | |
|---|---|---|
| Total ................................................ | $6,878 85 | $6,878 85 |
| Total value of estate as per inventory filed................ | | $6,378 85 |
| Less uncollectible paper................................ | | 568 77 |

| | |
|---|---|
| True value of estate.................................... | $5,810 08 |
| Cost of administration.................................. | 613 40 |

| | |
|---|---|
| Leaving to be divided between three heirs.................... | $5,196 68 |
| Share of each.............................. $1,732 22⅔ | |
| Share of Bertie Overton................................ | $1,732 22⅔ |
| Paid her as per vouchers................................ | 1,693 80 |

| | |
|---|---|
| Balance due her.................................... | $    38 42⅔ |
| Share of William J. Overton.............................. | $1,732.22⅔ |
| Paid Elbert Carlin, his curator (see vouchers)............... | 1,690 80 |

| | |
|---|---|
| Balance due him.................................... | $    41 42⅔ |
| Share of Daisy Overton................................ | $1,732 22⅔ |
| To be charged to her as per order of court.................. | 80 00 |

| | | |
|---|---|---|
| Balance due her.................................... | | $1,652 22⅔ |
| | $    38 42⅔ | |
| | 41 42⅔ | |
| | 1,652 22⅔ | |

Total on hand............... $1,732 08

On May 15, 1901, Mrs. Bertie Boggs, who was before marriage Mrs. Bertie Overton, the widow of deceased, filed exceptions to said report, and says she "excepts to the final report and exhibit for final settlement of this estate made by the executor, John C. Gray, and hereby excepts to each and every all and singular, the annual reports and settlements so made herein before by the said executor, John C. Gray," and for grounds thereof says:   First.   That said executor was, on the ――― day of October, 1896, appointed and qualified as guardian and curator of the person and estate of Daisy Overton, one of the legatees in the will of said William J. Overton, deceased, and on the ――― day of ――― 189―, by reason of a life benefit certificate, paid for by said deceased, received $2,000 from the Wood-

men of the World, and placed same to credit of said Daisy Overton, the beneficiary in said certificate, and refuses to place an equal sum of said estate to the credit of your petitioner, as was his duty to do, under the law and provisions of the will of said deceased, before making other distributions of said estate. Second. That said John C. Gray, refuses to charge himself as executor with the said sum of $2,000 received by him for the said legatee Daisy Overton from the Woodmen of the World as aforesaid, which under the provisions of the will he was required to compute as a charge or advancement to the said Daisy Overton in the settlement of said estate. Third. That said executor, as shown by said final report, refuses to make such distribution of said estate. That your petitioner, Daisy Overton, and Wm. J. Overton, the three legatees named in said will, shall share equally in the property of said estate, as was the clear intention and purpose of said testator, as shown by the terms of said will; and asks that said executor be required to credit petitioner and Wm. J. Overton $2,000 each, to equalize their shares with Daisy Overton, by reason of the $2,000 received by her under said certificate as aforesaid, and that same be done before said report is approved. Fourth. That if, for any reason, said executor should not be required to make distribution in conformity with the intent expressed in said will and as shown in these exceptions, then petitioner asks she be permitted to elect that her share be given under the law, and not under the will, that is, that she be allowed to renounce the will and take her dower interest. That she understood said estate would be distributed, as shown by her exceptions, equally between the legatees, and was not advised that said executor contended otherwise, until long after the filing of his final report, which is herein excepted to.

On same day Elbert Carlin, as guardian and curator of the person and estate of William J. Overton, excepted to said final report, upon same grounds stated by the widow, and, in addition

that said report is not properly itemized as required by law; that the amount of credit asked by said executor for J. B. Turner's attorney fees is exorbitant; that voucher D is an improper charge; that $30.80, charged for trip to Texas, is improper; that the item of uncollectible paper and United States warrants is not properly itemized.

On July 17, 1901, the widow filed same exceptions filed by Elbert Carlin as guardian, and not included in her original exceptions.

On August 6, 1901, John C. Gray, executor, filed motion to strike out the exceptions to his third annual settlement, because "said exceptions were not filed within the time prescribed by law." On same day the court overruled said motion, to which said executor excepted.

On August 7, 1901, said exceptions were heard and decided by the court as follows: "The widow, having come in and claimed to elect and not take under the will, but to take her claims according to law, will be allowed to make her election at this time and after the time required by the statute as to the claim of $150, in addition to one-third of the estate. The debts of the estate having been settled, she will be allowed to reach into the estate and take her one-third prior to the settlement of such debts; and that to this extent only her fourth exception is sustained." The fifth exception was overruled. As to the sixth exception, in reference to the attorney's fees of J. B. Turner, "the court allows said executor to credit himself with $50 on account of such attorney's fees, as executor. As to the remainder, the court finds that the services of said J. B. Turner were reasonably worth $150, but that $50 of said charge, when properly presented, should be allowed to said Turner from the estate of Daisy Overton, a minor, and that said guardian may

take credit in distributing her share for such sum, and pay the same to said J. B. Turner, and to this extent only her exception should be sustained." The seventh exception was overruled. The eighth exception sustained, and $30.80, expense of trip to Texas, disallowed. The ninth exception overruled: "And, it further appearing to the court from her said exceptions and from statements of counsel on both sides that the said executor, J. C. Gray, was on the ——— day of October, 1896, appointed and duly qualified by this court as guardian and curator of the person and estate of Daisy Overton, one of the legatees named in the last will and testament of William J. Overton, deceased, and thereafter, to wit, on the ——— day of ———189—, the said J. C. Gray, as such guardian and curator, by reason of a life benefit certificate taken out and paid for by said William J. Overton, deceased, in the Woodmen of the World, in which said life benefit certificate the said Daisy Overton was named as beneficiary, received and collected the sum of $2,000 from said insurance company, and charged himself therewith as guardian of said Daisy Overton, and has failed and refused, and still refuses, to administer the said $2,000 into the estate of William J. Overton, deceased, and charge himself therewith as executor, and fails and refuses to place an equal sum of the personal estate of William J. Overton, deceased, to the benefit of the widow, Bertie J. Boggs (nee Overton) and William J. Overton, Jr., the remaining legatees under the will of William J. Overton, deceased: It is the opinion of the court that said $2,000 is no part of the estate of William J. Overton, deceased, but the sole property of Daisy Overton, the beneficiary named in the life benefit certificate or policy, and that said Gray is chargeable therewith as guardian of said Daisy Overton, and not as executor of the last will and testament of William J. Overton, deceased; and the widow's remaining exceptions and all other exceptions filed herein and in conflict with this decree be and the same are hereby overruled. To the overruling of all of which said exceptions the said Bertie J. Boggs (nee Overton)

and William J. Overton, Jr., by their attorneys, then and there excepted and still excepts."

On December 4, 1901, John C. Gray, executor, filed his third annual settlement, corrected as per order of court, showing as follows:

| | | |
|---|---:|---:|
| Cash on hand at last settlement | | $3,646 05 |
| Cash since collected | | 105 78½ |
| | | |
| Total cash | | $3,751 83½ |

That he has paid out and asks credit for:

| | | |
|---|---:|---:|
| To E. Carlin, see voucher "A" | $1,490 80 | |
| To Turner, Atty's fee | 50 00 | |
| **1898.** | | |
| Nov. 29.   For one acknowledgment | 25 | |
| Dec. 5.   For serving notices | 3 50 | |
| **1899.** | | |
| May 26.   For Drug bill at Wright's | 60 | |
| Oct. 2.   For two acknowledgments | 50 | |
| **1900.** | | |
| Jan. 9.   For Clerk costs | 5 00 | |
| Jan. 22.   For Clerk's Cost, filing bill | 8 00 | |
| April 26.   For serving notices | 3 50 | |
| April 21.   For Probate Commissioner's fee | 2 50 | |
| As executor's commission he asks | 324 30 | |
| | | |
| Total | $1,888 95 | $1,888 95 |
| And also asks credit for uncollected paper | | 568 77 |

Then he recapitulates, showing:

| | | |
|---|---:|---:|
| Total value of estate as per inventory and appraisement | | $6,378 85 |

That he is entitled to the following credits:

| | | |
|---|---:|---:|
| Credits received as per 1st settlement | $1,878 25 | |
| Credits received as per 2nd settlement | 180 00 | |
| Credits asked on 3rd settlement | 1,888 95 | |
| Uncollectible paper | 568 77 | |
| Cash on hand | 1,862 88½ | |
| | | |
| Total | $6,378 85 | $6,378 85 |
| Total value of estate as per inventory | | $6,378 85 |
| Less uncollectible paper | | 568 77 |
| | | |
| True value of estate | | $5,810 08 |

| | | |
|---|---:|---:|
| Cost of administration | 482 | 60 |
| | $5,327 | 48 |
| Less widow's dower as per order court | 150 | 00 |
| Leaving to be divided among three | $5,177 | 48 |
| Share of each | $1,725 | 827 |
| Share of Bertie Overton | $1,725 | 827 |
| To be paid her as "dower" | 150 | 00 |
| | $1,875 | 827 |
| Paid her as per voucher | 1,693 | 80 |
| Due her | $ 182 | 027 |
| Share of William J. Overton | $1,725 | 827 |
| Paid him as per voucher | 1,690 | 80 |
| Due William J. Overton | $ 35 | 027 |
| Share of Daisy Overton | $1,725 | 827 |
| Paid her as per voucher | 80 | 00 |
| Due Daisy Overton | $1,645 | 827 |
| Due Bertie Overton | $ 182 | 027 |
| Due William J. Overton | 35 | 027 |
| Due Daisy Overton | 1,645 | 827 |
| Cash on hand | $1,862 | 881 |

On same day the widow and minor heir, by his guardian, filed exceptions to said third annual settlement as amended, and states that it is the clear and certain intent of the deceased, in his last will, to divide all of his property, after his just debts were paid, equally, share and share alike, between Daisy Overton, his daughter, Bertie Overton, his wife, and William J. Overton, his son, and to include in said property said policy of $2,000 payable to his daughter, Daisy Overton; that this report proposes to give to the said Daisy Overton, contrary to the express and certain intent of the testator, $2,000 in excess of the distributive shares to be given to said widow and minor child; that under the law, if the said Daisy Overton desires to take the proceeds of the policy made payable to her in the Woodmen of the World by the deceased for $2,000, and not the devise under the will of the de-

ceased, she should be required by the court to elect, and vice versa, in which case she should be required by the court to relinquish the proceeds of said policy and claim the devise under said will. On April 7, 1902, John C. Gray, executor, files motion to strike from the files the exceptions filed December 4, 1901, and says said exceptions raise the same question heretofore passed on by this court in overruling the former exceptions filed to this report. On April 17, 1902, said motion to strike was overruled by the court, to which exceptions were saved.

"The exceptions to said report then and there came on to be heard upon the face thereof (no proof being heard in support of or against the same or any other exceptions filed in this cause); and it appearing to the court from the face of said exceptions and the face of the last will and testament in this cause that this is a proper case for an election, the court is pleased to, and does hereby, sustain said exceptions to said settlement (to the action of the court in sustaining said exceptions the executor, by his counsel, then and there excepted, and still excepts), the court of its own motion reserving an exception for Daisy Overton. It is therefore ordered, adjudged, and decreed by the court that Daisy Overton, minor child of William J. Overton, deceased, be, and she is hereby, directed and commanded to make her election and file the same in ——— days from this date, and state to the court whether she will retain the $2,000, the proceeds of the insurance policy mentioned in said will, and now in the hands of John C. Gray, her guardian, and take nothing under said will, or whether she will renounce all claim to said $2,000, and take a distributive share under said will with said $2,000 administered into the estate of William J. Overton. It is further ordered, adjudged, and decreed by the court that, should said election fail to be made within the time aforesaid, then and in that event the court elects for said minor, Daisy Overton, that she renounce said $2,000, and claim under said will (the same appearing to the court

to be her best interest), and the said John C. Gray, as executor be, and he is hereby, directed and commanded to deduct from said $2,000 the sum of $110 as his commission thereon, and administer the remainder thereof ($1,890) into the estate of William J. Overton, deceased, and divide the same share and share alike between Bertie Overton (now Boggs), Daisy Overton, and William J. Overton, and add said sum ($630) due each to the amount found due each under his third annual settlement as amended, and distribute the same as follows:

| | | |
|---|---|---|
| To Bertie Overton (now Boggs), as per said settlement | $ 182 | 027 |
| Add distributive share of said policy | 630 | 00 |
| And pay to said Bertie Overton (now Boggs) in full | $ 812 | 027 |
| To William J. Overton, as per said settlement | $ 35 | 027 |
| Add distributive share of said policy | 630 | 00 |
| And pay to William J. Overton in full | $ 665 | 027 |
| To Daisy Overton, as per said settlement | $1,645 | 827 |
| Add distributive share of said policy | 630 | 00 |
| And pay to said Daisy Overton in full | $2,275 | 827 |

"To all of which the executor, John C. Gray, by his counsel, then and there excepted, and still excepts."

On petition of said executor, John C. Gray, filed in this court on July 1, 1902, appeal was granted by the clerk of this court.

*John B. Turner*, for appellant.

*Preston S. Davis*, for appellees.

TOWNSEND, J. The appellees have filed a motion to dismiss the appeal in this case for the reason that none of ap-

pellant's substantial rights have been prejudiced by the judgment appealed from; that he has no interest such as will entitle him to appeal; that he has not been aggrieved as executor by the judgment of the lower court; that the decision of the lower court was correct so far as his interest as executor is concerned; that he cannot appeal because the rights of other persons are violated; and that, if any one is aggrieved by the decision of the trial court, it is the minor, Daisy Overton, and as her guardian he should have excepted and prayed an appeal, if he desired the decision of the lower court reviewed. The statute regulating appeals in this court is section 1267 of Mansfield's Digest (Ind. Ter. St. 1899, § 769), and is as follows: "The appeal shall be granted as a matter of right, either by the court rendering the judgment or order, on motion made during the term at which it is rendered, or by the clerk of the Supreme Court in term time or in vacation, on application of either party." Was not the appellant, as executor, the party making the report which was ordered modified in this case? Appellees assume in their motion that appellant, as the guardian of Daisy Overton, was a party, and bound by an order modifying his report as executor. When and where in this record is it disclosed that appellant, as guardian, was ever made a party to this report? It is pure assumption. Daisy Overton, the ward of John C. Gray, guardian, is a stranger to the proceeding. John C. Gray, as executor of the estate of William J. Overton, deceased, was before the court. Daisy Overton, the ward of John C. Gray, was not a party to this proceeding, and could not have appealed, and was not bound by an order or judgment rendered against John C. Gray, as executor. But John C. Gray, as executor, having been ordered by the court to make a distribution of the estate in a manner, as he contends, contrary to the terms and provisions of the will, took his exception, and appealed, which, in our opinion, under the statute he had a right to do. Therefore the motion to dismiss the appeal is overruled.

The appellant has filed assignments of error as follows:

"(1)  In overruling the motion to strike from the files exceptions to the third annual settlement.   (2)  In overruling the motion to strike from the files exceptions to third annual settlement as amended.   (3)  In sustaining the exceptions to the third annual settlement as amended, and making the final order appealed from:  (a)  Because the $2,000 ordered administered into the estate was no part of it; (a1) because the court was without jurisdiction to determine the title to this $2,000, as it was in dispute, and the order attempting so to do is coram non judice, and void; (a2) because the court was without jurisdiction to compel this $2,000 to be brought into hotchpot; (a3) because the court was without jurisdiction to compel an election, and its order attempting so to do is coram non judice, and void."

The first is overruling motion to strike because the exceptions were not filed in time under the statute, but were filed one day too late.   No substantial right of appellant was affected by filing the exceptions one day too late, and the court very properly disregarded the same.

The second is overruling motion to strike because the latter exceptions raised the same question passed on in overruling former exceptions.   The amended report ordered by the court was filed December 4, 1901, and the exceptions were filed on same day, while the exceptions last filed again brought up the question in regard to the $2,000 declared in the former ruling to be no part of the estate of William J. Overton, deceased, yet it brought to the attention of the court the provisions of the will, and, the report not having been finally approved, we conclude it was in the discretion of the court to overrule the motion to strike.

The third is sustaining exceptions to amended report and making final order.   In the exceptions filed by appellees on May

15, 1901, it is stated that John C. Gray was on the ————day of October, 1896, appointed and duly qualified as guardian and curator of the person and estate of Daisy Overton, one of the legatees of William J. Overton, deceased, and that thereafter "the said John C. Gray, as such guardian and curator, by reason of a life benefit certificate policy taken out and paid for by the said William J. Overton, deceased in the Woodmen of the World, received and collected the sum of $2,000 from said insurance company, and placed the same to the benefit and credit of said Daisy Overton, the beneficiary named in said policy, and the said John C. Gray neglects and refuses 'to administer the same into this estate.' " On August 7, 1901, the court, in passing upon these exceptions, found the foregoing facts to be true, but added: "It is the opinion of the court that said $2,000 is no part of the estate of William J. Overton, deceased, but the sole property of Daisy Overton, the beneficiary named in the life benefit certificate or policy, and that John C. Gray is chargeable therewith as guardian of said Daisy Overton, and not as executor of the last will and testament of William J. Overton, deceased," etc., and refused to order it administered into the estate as prayed by exceptants. On April 17, 1902, the court, in passing upon the exceptions to the amended report filed by appellant, sustained said exceptions requiring Daisy Overton to elect, and ordered "that Daisy Overton, minor child of William J. Overton, deceased, be, and she is hereby, directed and commanded to make her election, and file the same in ———— days from this date, and state to the court whether she will retain the $2,000, the proceeds of the insurance policy mentioned in said will, and now in the hands of John C. Gray, her guardian, and take nothing under said will, or whether she will renounce all claim to said $2,000, and take a distributive share under said will with said $2,000 administered into the estate of William J. Overton." Upon failure of said Daisy Overton to elect, as required by the foregoing, "then, and in that event, the court elects for said minor,

Daisy Overton, that she renounce said $2,000, and claim under said will (the same appearing to the court to be to her best interest), and the said John C. Gray, as executor, be, and he is hereby, directed and commanded to deduct from said $2,000 the sum of $110 as his commission thereon, and administer the remainder thereof ($1,890) into the estate of William J. Overton, deceased, and divide the same share and share alike between Bertie Overton (now Boggs), Daisy Overton and William J. Overton, and add said sum ($630) due each to the amount found due each under his third annual settlement as amended."

That this $2,000, which, under the foregoing order, the court proposes to administer into the estate in the event Daisy Overton does not elect within —— days, is no part of the estate of William J. Overton, deceased, the court so decided on August 7, 1901. The appellee concedes the fact, but, notwithstanding, the court of his own motion proposes to administer the same into the estate, and this, too, without the guardian of Daisy Overton, or Daisy Overton herself, being made a party to this proceeding. This whole proceeding is a report of appellant as executor. No order is asked in the guardianship matter of Daisy Overton, in which John C. Gray is guardian. Had John Jones been the guardian of Daisy Overton, it would never have occurred to any one that an order could be made upon him to turn over $2,000 insurance money belonging to his ward without at least getting him or his ward into court. The appellees, by their exceptions, claim this $2,000 is a part of the estate, and should be so treated, while the court said on August 7, 1901, that it was not. Yet he proposes, on April 17, 1902, to administer the same into the estate, unless the ward, who is not a party, does something within a certain time, and also proposes to order John C. Gray, who happens to be the guardian of said ward, to turn said $2,000 over to the appellant, John C. Gray, the executor of the Overton estate. The appellant, in every report filed, has never included

said $2,000 as a part of the estate, and appellees, in their exceptions filed on May 15, 1901, said "that she was not advised that the said John C. Gray, as executor, contended otherwise, until long after the filing of his final report and settlement herein excepted to." It thus appears that the ownership of said $2,000 was in dispute between appellant and appellees. Is this a matter within the jurisdiction of a probate court to try? The appellant says not, and quotes Woerner's Am. Law of Ad. § 151, which says: "Since the functions of the probate courts are limited, in respect to executors or administrators, to the control of the devolution of property upon the death of its owners, it is not their province to adjudicate upon collateral questions. The right or title of deceased to property claimed by the executor or administrator against third persons, or by third persons against him, * * * must, if an adjudication becomes necessary, be tried in the courts of general jurisdiction," etc. Same, § 317, p. 667, says: "* * * The probate court has no power to try the title to property between the personal representatives and a stranger." Am. & Eng. Enc. Law, vol. 24 (1st Ed.) p. 988, says: "Such courts have no authority to try the title to real or personal property"; citing note 1, which says: "When a third person claims property in the hands of an administrator, the court of probate has no power to try the question of title and make an order that the administrator deliver the property to the claimant;" citing cases. If, then, the court has no power to pass upon the title and order the administrator to turn over property to a stranger, it follows that it has no power to pass upon the title and order a stranger to turn over property to him. For John C. Gray, as guardian, claiming this $2,000 for his ward, as beneficiary in the policy, and not by virtue of the will, was thus holding it as a stranger to the estate and to John C. Gray, executor.

It is contended by appellant that the identical question was passed on in this court in Re Crutchfield, 3 Ind. Ter. Rep.

590 (64 S. W. 545). In this case the controversy arose between two guardians. One claiming that the other had secured more than her share of the estate, caused the court to issue a "citation on Josie Crutchfield, guardian of Vinita Crutchfield, to appear in this court, * * * and make a full report of her actions in said guardianship, and render a general accounting between herself as guardian of Vinita Crutchfield and Morris Frazee as guardian of Taylor Crutchfield." In obedience to the order, Josie Crutchfield came and accounted, and the balance was against her, and the court ordered her to turn it over. She appealed, and this court held that the court, when making the order, was sitting as a court of probate, with "only such jurisdiction as is conferred by statute; and we fail to find any statute conferring on this court any such jurisdiction as to enable it legally to make and enforce such an order as between contesting parties, strangers to each other." And added: "The right or title of decedent to property claimed by the executor or administrator against third persons * * * must, if adjudication becomes necessary, be tried by courts of general jurisdiction;" and held the order void. In White et al vs White (Tex. Civ. App.) 32 S. W. 48, action was brought in the county court by appellants to require the appellee, executrix of J. S. White, Sr., to file a complete inventory and give bond. At the death of White he had a certificate in the Knights of Honor for $2,000, Mrs. A. V. White being named as beneficiary therein. Appellants insisted that said $2,000 should be inventoried into said estate. In the county court she was ordered "as executrix, to place on the inventory of said estate" said $2,000. She appealed from the order to the district court, where she demurred to the effect "that said county court had no jurisdiction to hear and determine the motion to compel her to place on the inventory the $2,000 collected on said benefit certificate," etc. The district court sustained the demurrer, and the other side appealed. On final hearing the court said "that the sole and only controversy

is whether or not the money arising from the benefit certificate is the property of J. S. White's estate or the individual property of Mrs. White. The demurrer attacks the jurisdiction of the probate court to require Mrs. White to inventory the proceeds of the benefit certificate as the property of the estate. There can be no question but that the probate court has power, in a proper case, to require an executor or administrator to file a complete inventory. * * * It is also true that, where there is a controversy as to whether certain property belongs to the estate of some individual the probate court has no jurisdiction to adjudicate such an issue. * * * The judgment of the district court is affirmed." See, also, Myrick vs Jacks, 33 Ark. 428; Moss vs Sandefur, 15 Ark. 381; Mobley vs Andrews, 55 Ark. 222, 17 S. W. 805; Smith vs Gilmore, 13 Mo. App. 155. In Re Haas' Estate, 31 Pac. 893, the Supreme Court of California says: "This is an appeal by the executor, James F. Mooney, from an order settling his annual account. When the executor filed his account, a legatee under the will objected thereto upon the ground that he had a large sum of money, and also other personal property, in his possession, which was the property of the estate, and for which he had not accounted. In answer to these objections the executor set out that he was the duly appointed, qualified, and acting guardian of Ella V. Haas, a minor; that said property was her property, and he held it as her guardian. * * * He 'objected to the court's hearing and determining these matters upon the ground that as a court of probate it had no jurisdiction thereof.' The court nevertheless heard the issue, and held the property to belong to the estate, and charged the executor therewith. 'The minor, Ella V. Haas, was not a party to this proceeding in the trial court, and is not a party to this appeal, although the decree of the court, which is before us, holds this property to be the property of the estate. The necessary effect of this decree is to declare that she has no title therein, for the question of her title was the only question involved. The

executor was not in a position to represent the ward at the trial of that issue, * * * and the affirmance by this court of the judgment of the trial court would in no degree quiet the title to this property between the respective claimants. The issue raised * * * directly involved the question as to where the legal title to this personal property vested, and that was an issue the probate court had no power to hear and determine. * * * We think the judgment of the court was one beyond its power, and for that reason let it be reversed and the cause remanded." The foregoing seems to be very like the case at bar. In this case the court reserved an exception for Daisy Overton. But what did that amount to, when, not being before the court, either by herself or guardian, she was not affected by any of it? Morris vs Virden, 57 Ark. 232, 21 S. W. 223; Mansf. Dig. § 151 Ind. Ter. St. 1899, § 208) which is as follows: "Each person entitled to a distributive share of any estate, and not applying for distribution, shall be notified in writing of any such application at least ten days before any such order shall be made; or, if such distributee is a non-resident of this state, a notice of such application shall be published in some newspaper in this state at least six weeks before any such order shall be made."

The appellees, in their brief, say: "Counsel for the appellant spends much time and collects many authorities upon his argument of subdivision (a1) under his third specification of of error, beginning on page 21 of his brief, to show that a probate court is without jurisdiction to determine the title to this $2,000, as it was in dispute, and the order attempting so to do is coram non judice, and void. His authorities may be good, and may contain the law on this subject. As we have been exceedingly cramped for time, and as this question of title does not enter into this case at bar for a single instance, we have not examined the cases cited." The view appellees seem to take is that, because the court determined that Daisy Overton would, in his

judgment, get a larger sum by taking one-third of the estate after administering said $2,000 into the estate than she would by keeping the policy, therefore the title to the $2,000 is not in dispute. But appellant, in his exception, says otherwise, and, under the authorities, the title being in dispute, the court was without authority to try the issue at all, even if Daisy Overton and her guardian had been before the court.

The appellant contends that the probate court has no power to compel an election. The appellees vigorously dispute that contention, but have cited no Arkansas authorities thus construing their statute, and the question may be one of doubt; but no one would contend that an election could be compelled by a probate court or a chancery court without the party was in court.

For the reasons stated, the cause must be reversed and remanded.

RAYMOND, C. J., and CLAYTON, J., concur.